UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ricardo Gallardo,<br><br>　　　　　　Petitioner,<br><br>v.<br><br>Warden Rios, and Federal Bureau of Prisons,<br><br>　　　　　　Respondents. | Case No. 18-cv-293 (ECT/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

Ricardo Gallardo, 12501-424, Federal Prison Camp, P.O. Box 1000, Duluth, MN 55814, *pro se*

Ana H. Voss, Ann M. Bildtsen, and Bahram Samie, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, for Defendants

HILDY BOWBEER, United States Magistrate Judge

　　On February 1, 2018, Petitioner Ricardo Gallardo ("Gallardo") filed a Petition for Writ of Habeas Corpus Person in Federal Custody Title 28 U.S.C. § 2241 ("Petition") [Doc. No. 1] challenging the calculation of his sentence by the Federal Bureau of Prisons ("BOP"). The Petition was referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that the Petition be denied.

**I.　　Background**

　　Gallardo was arrested on February 12, 2004, by federal drug enforcement agents. (Pet. at 7–8.) On December 16, 2005, Gallardo was sentenced to 360 months

imprisonment for three drug related convictions and two money laundering related convictions. (Decl. of J.R. Johnson, "Johnson Decl." ¶ 4 [Doc. No. 7]; Resp. to Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, "Resp." [Doc. No. 5 at 2]).) Gallardo is an inmate at the Duluth Federal Prison Camp located in Duluth, Minnesota. (Pet. at 2.) Upon sentencing, the BOP completed a sentence computation and determined April 1, 2030, was Gallardo's projected sentence satisfaction date. (Johnson Decl. ¶ 11; *see also* Resp. at 3.) Gallardo received 673 days of prior custody credit for the time he spent incarcerated from his arrest date until his sentencing hearing. (*Id*.)

### A.   Sentence Reductions

On June 6, 2014, Gallardo filed an application for Executive Grant of Clemency. (Pet. at 9.) Shortly thereafter, Gallardo filed a Motion for Modification or Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782. (*Id*. at 10.) On October 26, 2015, the Northern District of Illinois issued an Order reducing Gallardo's total sentence to 292 months imprisonment in light of changes in the sentencing guidelines for drug offenses. (Johnson Decl. ¶ 12; *see also* Resp. at 3.) Gallardo received a new Sentence Computation Sheet from the BOP stating Gallardo's new projected release date was April 24, 2025. (Pet. Ex. B [Doc. No. 1–1 at 11–12].[1])

On August 30, 2016, President Obama signed an Executive Grant of Clemency commuting Gallardo's total sentence "to a term of 240 months' imprisonment, leaving intact and in effect . . . the term of supervised release imposed by the court with all its

---

[1]   All exhibits attached to the Petition were filed as a single document. Thus, when referencing the exhibits attached to the Petition, CM/ECF pagination is used.

conditions and all other components of each respective sentence." (Pet. Ex. E-2 at 28.) The letter accompanying the grant of clemency specifically stated "[m]y decision to commute your sentence will not result in your immediate release, and you will be required to serve additional time to reflect the seriousness of your offense." (Pet. Ex. E-1 at 24.) In addition, the President noted, "I understand you may be pleased by the commutation grant but disappointed with the remaining period you will have to serve." (*Id.*) Based upon the Executive Grant of Clemency, the BOP issued an updated sentence computation adjusting Gallardo's release date to July 15, 2021. (Johnson Decl. ¶ 14.)

On February 6, 2017, Gallardo filed a motion to reduce his sentence to time served or 180 months. (Johnson Decl. Ex. J [Doc. No. 7–1 at 50].[2]) On June 23, 2017, the Honorable Philip G. Reinhard, United States District Judge in the Northern District of Illinois dismissed the motion for lack of jurisdiction. (Johnson Decl. Ex. K at 63.)

### B.    Administrative Grievance Procedure

The BOP follows the inmate administrative grievance procedure created by the Bureau Administrative Remedy Program, which includes four levels of appeal. (Decl. of Shannon Boldt "Boldt Decl." [Doc. No. 6 ¶¶ 5–6]); *see also* 28 C.F.R. §§ 542.10–.19. The first level consists of informal resolution between the prison staff and the inmate. (Boldt Decl. ¶ 7.); *see also* 28 C.F.R. § 542.13. If the complaint is not resolved, the inmate may advance to the second step which includes filing a formal Request for

---

[2] All exhibits attached to the Johnson Declaration were filed as a single document. Thus, when referencing the exhibits attached to the Johnson Declaration, CM/ECF pagination is used.

Administrative Remedy.  (*Id.*); *see also* 28 C.F.R. §§ 542.13–.14.  The third step involves the inmate appealing the response at a Regional level—and if necessary—the fourth step requires that the inmate file an appeal to the National level.  (*Id.*); *see also* 28 C.F.R. § 542.15.  According to the BOP, an inmate exhausts his or her remedies by proceeding through all levels of the appeal process. (Boldt Decl. ¶ 8)

The BOP retains information about inmate administrative complaints and appeals dating back to July of 1980.  (*Id.* ¶ 10.)  As of February 9, 2018, the BOP records indicate that Gallardo had filed two administrative remedy requests in which he appealed disciplinary action to the Regional and Central Office.  (*Id.* ¶¶ 13–15; *id.* Ex. B [Doc. No. 5-1 at 6–7].)  Per the BOP's records, Gallardo has not pursued administrative remedies regarding the computation of his sentence.  *See generally* (*id.*; *id.* Ex. B.)  Gallardo does not dispute that he has not exhausted his administrative remedies.  Instead, he argues that exhaustion would be futile because he sought immediate release, and the two sentence calculation sheets he was given were inaccurate and incorrect. (Pet's' Reply to Resp't's Resp. to Pet. for Writ of Habeas Corpus Pursuant to 28 USC § 2241, "Reply to Resp." [Doc. No. 9 at 4].)

**II.   Analysis**

    **A.   Legal Standard**

An inmate can file a petition under 28 U.S.C. § 2241 to challenge the calculation or interpretation of his sentence by the BOP.  *United States v. Tindall*, 455 F.3d 885, 888 (8th Cir. 2006).  The petition must be filed in the inmate's district of incarceration. *See, e.g.*, *United States v. Obeso-Melchor*, No. 10-cr-0230 (PJS/FLN) 2012 WL 1941799, at

*1 (D. Minn. May 29, 2012) (Schiltz, J.); *United States v. Seelye*, No. 07-cr-377 (ADM/RLE) 2014 WL 639867, at *2 (D. Minn. Feb. 19, 2014) (Montgomery, J.). Typically, a review under § 2241 is only appropriate where the petitioner exhausts his or her administrative remedies. *See Tindall*, 455 F.3d at 888. That said, when attempts to exhaust are futile, the failure to exhaust may be excused. *See, e.g.*, *Knox v. United States*, No. 16-cv-879 (WMW/KMM), 2016 WL 5956099, at *2 (D. Minn. Sept. 1, 2016) (Menedez, Mag. J.), *as adopted as modified*, 2016 WL 6022940 (Oct. 13, 2016) (Wright, J.) Furthermore, a court may proceed to the merits of a petition that has not been exhausted because the exhaustion requirement is not jurisdictional. *See, e.g.*, *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007); *Knox*, 2016 WL 5956099, at *2–7; *Akbar v. Babcock*, No. 10-cv-4493 (SRN/DSD), 2009 WL 3062001, at *2, 4–5 (D. Minn. Sept. 21, 2009) (Nelson, Mag. J., adopted by Doty, J.).

    **B.**    **Discussion**

        **1.**    **Exhaustion**

The BOP has the authority to administer federal sentences. *United States v. Wilson*, 503 U.S. 329, 335 (1992); *see also* 18 U.S.C. § 3621(a). When an inmate wishes to challenge the administration of a federal sentence, he must utilize the BOP's grievance procedures before seeking judicial review. *Wilson*, 503 U.S. at 335. The BOP has an informal and formal administrative process to address inmate grievances and appeal of decisions made in that process. *See* 28 C.F.R. §§ 542.10–.19.

It is undisputed that Gallardo did not attempt to exhaust his administrative remedies regarding the subject of his instant Petition before seeking relief in this Court.

*See* (Boldt Decl. ¶¶ 13–16; Boldt Decl. Ex. B at 6–7; Resp. at 6; Reply to Resp. at 4.) Instead, Gallardo argues that exhaustion would be futile. *See* (Reply to Resp. at 4.) The exhaustion of administrative remedies becomes futile when "there is no reasonable prospect that [the petitioner] could obtain any relief" by pursuing a claim with the administrative agency. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (internal quotation marks omitted). That is, futility must be determined on a case-by-case basis and is only appropriate where a petitioner "can show that proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose." *Giannini v. Fed. Bureau of Prisons*, No. 09-cv-1166 (JMR/JSM), 2010 WL 1427318, at *5 (D. Minn. Feb. 12, 2010) (Mayeron, Mag. J.) (citing cases), *adopted by* 2010 WL 1427320 (Apr. 9, 2010) (Rosenbaum, J.).

Here, Gallardo seems to argue that exhaustion serves no purpose because he was entitled to immediate release. *See* (Reply to Resp. at 4.) But if failure to exhaust could always be excused because a prisoner alleges he is entitled to immediate release, the requirement of exhaustion would fail of its real purpose. *Cf. Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974) ("The extraordinary nature of the writ requires this. It should not be resorted to until other more conventional remedies have failed. When proper grievance procedures exist, their utilization benefits the prisoner, the prison authorities and the courts. If such procedures are given a fair chance to succeed, not only will the prisoner receive expeditious relief when he is entitled to it, the administrative burden processing federal suits places upon prison authorities will greatly decrease as well."); *see also White v. English*, No. 12-cv-527 (MJD/JJK), 2012 WL 3848463, at *3 (D. Minn.

6

July 9, 2012); *Wolff v. Cruz*, No. 09-cv-437 (PJS/AJB), 2009 WL 2143692, at *3 (D. Minn. July 14, 2009) (citing *Willis*). That is, "[t]he exhaustion requirement stresses both respect for agency prerogatives and principles of judicial economy by seeking to prevent premature interruption of the administrative process." *See Krempel v. Prairie Island Indian Cmty.*, 125 F.3d 621, 623 (8th Cir. 1997) (internal quotation marks omitted).

As a result, when courts consider allegations that the passage of time makes exhaustion futile, courts typically consider whether the administrative process would conclude after a petitioner's *scheduled* release. *See, e.g.*, *White*, 2012 WL 3848463, at *3; *Lopez v. Fischer*, No. 10-cv-3928 (PJS/SER), 2011 WL 3438861, at *3 (D. Minn. July 18, 2011); *Tensley v. Outlaw*, No. 2:10CV00014, 2010 WL 2671782, at *2 (E.D. Ark. July 2, 2010) (concluding under the facts of the case that the time requirements of an administrative process would render exhaustion futile). In this case, however, Respondents asserts that "[b]ecause of the strict response time limits at each level of the BOP's remedy process, it takes six months or less to exhaust the administrative remedy process." (Resp at 8.) *See* 28 C.F.R. § 542.18. Gallardo is not currently scheduled for release until July 15, 2021 (Johnson Decl. ¶ 14), well after the anticipated conclusion of the administrative process, and even more so if he had begun that process before he filed the instant Petition. Consequently, the case law suggesting that failure to exhaust because there is insufficient time to exhaust administrative remedies prior to the scheduled release date does not apply here. *See White*, 2012 WL 3848463, at *3; *Wolff*, 2009 WL 2143692, at *3.

7

Nevertheless, courts have also considered exhaustion to be futile where the administrative agency has already predetermined an outcome. *See, e.g.*, *Gibson v. Berryhill*, 411 U.S. 564, 575 n.14 (1973); *Lopez v. Fischer*, No. 10-cv-3928 (PJS/SER), 2011 WL 3438861, at *3 (D. Minn. July 18, 2011); *Kyles v. Fondren*, No. 08-cv-6074 (PAM/RLE), 2009 WL 4041491, *4 (D. Minn. Nov. 18, 2009). That may well be the case here. The dispute between Gallardo and the BOP boils down to a fundamental difference of view about the interplay between the sentencing reduction to which the district court in the Northern District of Illinois found he was entitled, on the one hand, and the commutation of sentence granted by the President, on the other. Nothing in Respondents' argument to this Court suggests any reason to believe that pursuit of the administrative appeal process would have led to reconsideration of its position about Gallardo's release date. *See, e.g.*, (Johnson Decl. ¶ 14); *see also* (Resp. at 11–12) ("Gallardo's sentence computation, based on his commuted 240-month sentence, has been properly computed in accordance with federal statutes, BOP regulations and policies, and court precedents and thus his current projected release date of July 15, 2021, via a good conduct time release is correct.") As a result, it appears that the BOP has predetermined that Gallardo's requests for administrative relief would be denied. Therefore, the Court recommends that Gallardo's Petition be considered on the merits, and turns now to that consideration. *Accord Gibson*, 411 U.S. at 575 n.14; *Lopez* , 2011 WL 3438861, at *3; *Kyles*, 2009 WL 4041491, *4.

### 2. Merits of Gallardo's Petition

Gallardo disputes his June 15, 2021, release date, asserting he is entitled to

8

immediate release in light of the executive grant of clemency. (Reply to Resp. at 1–2.) His primary argument is that because his application seeking a sentencing reduction under 18 U.S.C. § 3582 was filed after his request for clemency, the sentencing reduction should be applied to the *commuted* sentence, even though the reduced sentence was already of record when President Obama issued the grant of clemency. *See* (*id.*; *see also* Pet. at 13.)

Gallardo acknowledges that to subtract the 68 months by which his sentence was reduced by the Northern District of Illinois from the 240-month total sentence established by the President would have entitled him to immediate release at the time the commutation was granted, and that this result would be at odds with the President's statement that the grant did *not* entitle Gallardo to immediate release. *See* (Pet. at 13; *see also* Pet. Ex. E-1.) But Gallardo argues that if the sentencing reduction to which he was entitled under 18 U.S.C. § 3582 had been properly applied to the 240-month commuted sentence, it would have resulted in a sentence of 193 months—an outcome that would not have led to immediate release then, but would entitle him to release now. *See* (Pet. at 15; Reply to Resp. at 1–2.)

Implicit in this argument is that the executive grant of clemency was uninformed by the judicial sentencing reduction that Gallardo had already obtained. But President Obama commuted Gallardo's sentence almost one year after Gallardo's sentence was reduced by the Northern District of Illinois. The grant explicitly commutes Gallardo's sentence of imprisonment to 240 months, while leaving intact the term and conditions of supervised released imposed by the court. (Pet. Ex. E-2 at 28.) If the President had

9

wished to apply the previously adjudicated sentencing reduction to the commuted sentence in the manner urged by Gallardo, it was well within his authority to do so. U.S. Const. art. II, § 2; *see also Schick v. Reed*, 419 U.S. 256, 266 (1974) (stating the purpose of Article II, Section 2 "was to allow plenary authority in the President to 'forgive' the convicted person in part or entirely, to reduce a penalty in terms of a specified number of years, or to alter it with conditions which are in themselves constitutionally unobjectionable"). But he did not do so. The presidential order did not state, for example, that Gallardo's judicially imposed sentence, whatever it was or might be determined to be, must be reduced by a specific number of years, nor did it require or even suggest that the analysis done a year earlier by the Northern District of Illinois under 18 U.S.C. § 3582 should be redone as against the new 240-month commuted sentence. Furthermore, the grant of clemency did reduce Gallardo's sentence beyond what was achieved through Gallardo's 18 U.S.C. § 3582 motion. *Compare*, (Pet. Ex. B at 11–12) (listing Gallardo's release as April 24, 2025, after receiving the sentencing reduction), *with* (Johnson Decl. ¶ 14) (noting that the BOP issued an updated sentence computation adjusting Gallardo's release date to July 15, 2021).) Thus, there is nothing here to suggest that the resulting sentence calculated by the BOP failed to realize either the intent of the presidential grant of clemency or the decision of the Northern District of Illinois a year earlier.

   Furthermore, as in *Schick*, the President's act of clemency substitutes the established sentence as well as "the conditions described in the commutation." *See* 419 U.S. at 258. That is, because Gallardo's sentence was reduced prior to President

10

Obama's grant of clemency, Gallardo's commuted punishment is now "a total sentence of imprisonment . . . to a term of 240 months' imprisonment, leaving intact and in effect . . . the term of supervised release imposed by the court with all its conditions and all other components of each respective sentence." (Pet. Ex. E-2 at 28.)  There is nothing to suggest that this commutation is unconstitutional.  *Cf. Schick*, 419 U.S. at 266.  As President Obama stated, Gallardo "may be pleased by the commutation grant but disappointed with the remaining period [he] will have to serve."  *See* (Pet. Ex. E-1 at 24.)  Thus, nothing in the case law suggests that in the circumstances presented here, this Court has the power to alter the terms of the commuted sentence established by the President as Gallardo urges.  *Accord Schick*, 419 U.S. 256; *Ex Parte Wells*, 59 U.S. 307 (1855); *see also Schick*, 419 U.S. at 268 (stating a petitioner may also request additional grants of clemency to cure perceived errors in the commuted sentence).[3]

Consequently, the Court recommends that Gallardo's Petition be denied.

### III. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner Ricardo Gallardo's Petition for Writ of Habeas Corpus Person in Federal Custody Title 28 U.S.C. § 2241 [Doc. No. 1] be **DENIED**.

---

[3] This is not a situation involving a motion for a reduction under 18 U.S.C. § 3582(c)(2) after the grant of clemency.  *See, e.g.*, *United States v. Harris*, 692 Fed. App'x 210 (5th Cir. 2017); *United States v. Gibson*, 2017 WL 1301514 (D. Md. Apr. 7, 2017); *United States v. Buenrostro*, 2016 WL 6895445 (E.D. Cal. Nov. 23, 2016).

Dated: February 4, 2019

      s/ *Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).